**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 04-4444**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JEAN ANDREW MCKINNEY, a/k/a Red,

Defendant - Appellant.

Appeal from the United States District Court for the Northern
District of West Virginia, at Clarksburg.  Irene M. Keeley, Chief
District Judge.  (CR-03-59)

Argued:  December 2, 2005          Decided:  April 28, 2006

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished  per
curiam opinion.

**ARGUED:** L. Richard Walker, Assistant Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia,
for Appellant.  Sherry L. Muncy, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia,
for Appellee.  **ON BRIEF:** Thomas E. Johnston, United States
Attorney, Wheeling, West Virginia; Robert M. McWilliams, Jr.,
Assistant United States Attorney, Clarksburg, West Virginia, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Jean Andrew McKinney appeals his conviction and sentence for making a threatening telephone call. We find no reversible error in the evidentiary and procedural rulings challenged by McKinney and therefore we affirm his conviction. We are also of opinion that the district court erred under United States v. Booker, 543 U.S. 220 (2005), in determining McKinney's sentence. Thus, we remand to the district court for resentencing.

I.

Jean Andrew McKinney is a 68-year-old retired electrician who lived with his wife, Glenda McKinney, in Powell, Wyoming. He was indicted after he became involved in a dispute between Mrs. McKinney and her relatives in West Virginia over an inheritance.

In 1996 Mrs. McKinney's mother, Norma Agnew, executed a will and a separate trust agreement providing that the remainder of her estate be distributed upon her death to Mrs. McKinney. The estate was valued at approximately $1 million. In 2002, Mrs. Agnew executed an amendment to her trust. The amendment provided that the remainder of the trust should be distributed one-half to Mrs. McKinney and one-half to Mrs. Agnew's brother, James Davis. Mrs. Agnew died in April 2003.

McKinney disagreed with the manner in which funds were allocated. He believed that a larger portion of the estate should

3

have gone to his wife.  Specifically, McKinney took the position that Davis coerced a failing Mrs. Agnew to amend her trust in 2002. Starting in September 2003, McKinney made a series of calls to Davis and members of Davis' family, threatening harm to the family if most of Davis' portion of the estate was not repaid to Mrs. McKinney.  McKinney claimed that he never threatened anyone with physical harm or violence, but that he did threaten to sue Davis and family if the funds were not transferred to Mrs. McKinney.

On November 5, 2003, a grand jury returned an indictment charging McKinney with conspiring to make extortionate threats over the telephone in violation of 18 U.S.C. § 371 (Count One) and with making a threatening interstate telephone communication on October 17, 2003, in violation of 18 U.S.C. § 875(b) (Count Two).  At the jury trial on March 15-17, 2004, the district court dismissed Count One after the government's case-in-chief because the government had failed to present evidence of an agreement with a co-conspirator. The jury returned a guilty verdict as to Count Two.  On June 1, 2004, McKinney was sentenced to 57 months in prison to be followed by three years of supervised release.

II.

We review for abuse of discretion decisions as to whether or not evidence is relevant. United States v. Russell, 971 F.2d 1098, 1104 (4th Cir. 1992), and a probative/prejudicial balance of a

4

trial court is not disturbed except in extraordinary circumstances not present here.

## A.

McKinney first contends that the district court erred in excluding favorable evidence of Mrs. Agnew's diminished mental and physical condition as it related to the amendment of her trust and the existence of a threat to do physical harm. McKinney claims that he filed a witness list including individuals familiar with Mrs. Agnew and that the purpose of deposing[1] these witnesses was to establish Mrs. Agnew's diminished mental and physical condition around the time of the amendment to her trust. The district court granted in part the government's motion to exclude these witnesses, reasoning that the evidence was "anecdotal," "irrelevant," and could "confuse the jury."

McKinney argues that he has a constitutional right to present his best defense, which includes the right to obtain the testimony of favorable witnesses and compel their attendance. At trial McKinney argued that the few telephone calls he actually placed to Davis and his family only included threats to sue, which would not have been construed as threats to do physical harm by a reasonable recipient understanding the context. McKinney contends the

_____

[1]No question has been made of taking depositions in a criminal case.

5

testimony of the excluded witnesses, all of whom were women who lived in the nursing home with Mrs. Agnew, would tend to substantiate to a certain extent that the trust amendment was unlawful. McKinney also argues that this shows he may have had legitimate legal grounds to contest the will and trust and sue Davis. Further, the excluded testimony would have also indicated that Davis was on notice of Mrs. Agnew's diminished condition. Thus, according to McKinney, the jury could have inferred that Davis knew of the real possibility of a law suit by McKinney for his unjust enrichment.[2]

The district court found that the sort of evidence the women would have provided was not sufficiently probative or relevant and could confuse the jury. The district court did state that it would allow the defense to introduce the testimony of the decedent's doctor as to her mental state if it turned out that a contested issue was a good faith belief of McKinney that Mrs. Agnew's mental state was slipping or compromised. The defense, however, did not subpoena the doctor nor call him as a witness at trial.

McKinney contends that he has been deprived of presenting his best defense when the district court excluded the testimony of the women who lived in the same nursing home as Mrs. Agnew. As noted, the district court, however, allowed the defendant to subpoena Mrs.

---

[2]We express no opinion that even a valid claim of a will contest is a defense to extortion.

Agnew's doctor to present evidence that her mental status was slipping or compromised. The defendant did not subpoena the doctor nor call him as a witness at trial. So when presented with the opportunity to call a witness who would presumably have had the most credibility and possessed the most relevant and competent evidence as to Mrs. Agnew's mental condition, McKinney chose not to pursue this defense. To claim now that he was constitutionally deprived of presenting his best defense when he was given the opportunity and chose not to present the best witness is to claim a right that has been effectively waived.

## B.

McKinney next argues that the district court erred in admitting evidence offered by the government of a threatening telephone communication allegedly made by McKinney after the date of the offense alleged in Count Two, October 17, 2003. The government presented evidence that on October 17, 2003, the defendant made a telephone call demanding money and threatening physical harm if his demands were not met by a November 15 deadline. This call was the culmination of a series of calls made by McKinney to members of James Davis' family discussing either money or threats of physical harm.

The calls began in September and continued through October. McKinney called Tina Davis, wife of Marty Davis, grandson of James

Davis, and told her about "doped up friends from Elkins that would take care of Grandpa."  A call to Marty Davis repeated these claims and extended the threat to include the fact that the "doped up friends" had been on Davis' porch holding flares.  A call from the defendant warned of harm that might come to Michelle, James Davis' granddaughter, by the same friends from Elkins.  Calls from the defendant to Davis illustrated the anger of McKinney toward Davis about the distribution of the estate.  Calls between McKinney and Davis' son included threats of harm to Davis and his family if Davis did not obey the demands of McKinney, which culminated in the call on October 17 that gave a deadline of November 15.

These calls were presented to explain the context of the call on October 17.  The call on October 22, from McKinney to James Davis, completed the story of the crime on trial, that is, that the October 17 call was a true threat.  The words spoken during the October 22 call were "I tell you this one, we just found out you only have one granddaughter."  The caller was identified by Davis, Tina Davis and Marty  Davis as McKinney.  The government argued at trial that the call on October 22 was only five days after the call in Count Two, that the voice was identified as the defendant, and that it referred to Davis' granddaughter, the subject of earlier calls.  The district court agreed and found that "its probative value outweigh[ed] its prejudicial impact" under Federal Rule of Evidence 403.  In any event, McKinney's position that the calls

8

related to a civil suit rather than to harm, a claim of innocent intent, makes the relevance of the October 22nd call apparent. Thus, the district court did not abuse its discretion in admitting the October 22nd telephone call. The balancing of the October 22nd call by the district court was not an erroneous balance under Russell, 971 F.2d at 1104, and we so hold.

III.

The defendant next contends that the district court erred when it denied his motion for mistrial. We review a district court's denial of a motion for mistrial for abuse of discretion. United States v. Dorlouis, 107 F.3d 248, 257 (4th Cir. 1997).

McKinney's mistrial motion was based on a telephone call on November 4, 2003, that the government presented at trial, which the district court excluded. The call to Davis said that if the November 15 deadline was not met, "I hope young Jason comes home from deer hunting." The district court initially allowed the tape of this call to be played and Davis identified the caller as McKinney. When the district court later dismissed Count One, the conspiracy count, it ruled that the telephone call on November 4 was too remote in time to the date of October 17 in Count Two and excluded this evidence. McKinney argues that although this telephone call was no longer evidence, it had been published to the jury on the first day of trial and had become an integral part of

9

the government's case. The district court erred, McKinney contends, in not giving an immediate curative instruction, instead of waiting until the last day of trial to give a limiting instruction. The district court charged the jury:

> . . . I am ordering that you not consider that telephone call for any purpose whatsoever in your considerations.

J.A. 534.

We are of opinion and hold that there is no reason to decide the jury did not follow the instruction of the district court which was given. We hold the district court did not abuse its discretion. Any delay until the count was disposed of was not error.

IV.

At sentencing the district court increased McKinney's base offense level of 18 because he made an express threat of bodily injury (increase of two levels), because he demanded $300,000 (increase of three levels), and because he made false statements while under oath (increase of two levels). Based on a total offense level of 25 and McKinney's criminal history category of I, the sentencing range was 57 to 71 months of incarceration. The district court imposed a sentence of 57 months in prison, the lowest period of incarceration under the Guidelines.

The district court imposed the sentence under the mandatory Sentencing Guidelines, which was plain error, because the sentence

10

imposed may have been a longer sentence than it might have otherwise adopted.  Compare United States v. White, 405 F.3d 208, 224 (4th Cir. 2005).  Of course, we imply no criticism of the district judge, who followed the law at the time of sentencing.

Even if the district judge's finding as to an express threat of bodily injury, which increased McKinney's sentencing level by two levels, was found by the jury, the demand of $300,000, as contrasted with some other sum, was found by the district court and not by the jury, as was the finding of false statements while under oath, which latter findings increased McKinney's level by three for the amount of $300,000 and two for the false statements.  Thus, we find that the obligatory findings by the district court rather than the jury increased the sentence awarded to a longer one than otherwise might have been imposed.

Accordingly, we affirm the defendant's conviction in all respects but vacate his sentence and remand the case for resentencing.

On remand, the district court should first determine the appropriate sentencing range under the Sentencing Guidelines, making all factual findings appropriate for that determination. The district court should consider this sentencing range along with the other factors described in 18 U.S.C. § 3553(a) and then impose a sentence.  United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005).  If that sentence falls outside the Guidelines range, the

11

court should explain its reasons for imposing a non-Guidelines sentence as required by 18 U.S.C. § 3553(c)(2).  As required by Hughes, the sentence must be "within the statutorily prescribed range and . . . reasonable."  401 F.3d at 546-47.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

12